BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

RITA F. LIN (CABN 236220)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6511
    FAX: (415) 436-7234
    Rita.Lin@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 15-00324 VC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| DARIUS GILBERT, | |
| Defendant. | |

## INTRODUCTION

The defendant, Darius Gilbert, stands before the Court to be sentenced after pleading guilty pursuant to a plea agreement to one count of escape in violation of 18 U.S.C. § 751(a) (Count One); eight counts of bank robbery (including five counts of armed bank robbery) in violation of 18 U.S.C. § 2113(a) (Counts Two through Nine); one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Eleven); and one count of using, carrying, and possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Fourteen).

The government concurs with United States Probation that the Total Offense Level is 30, that the defendant's Criminal History Category is VI, and that the Sentencing Guidelines range is 252 to 294 months. The government also concurs with Probation's recommendation of a sentence at the high end

of the range, at 294 months.

Darius Gilbert held up nine banks over the course of two months, robbing multiple tellers at each bank and screaming that he would kill anyone who did not comply quickly enough with his demands. He repeatedly pointed firearms directly in the faces of bank employees, and in one instance, counted down the seconds before he would shoot the man. He never needed to fire a gun during the robberies, because he was lucky enough to encounter compliant victims. In recorded calls, however, Gilbert made very clear that he fully intended to shoot whoever was necessary, including law enforcement, to avoid being apprehended. In the end, bloodshed was avoided because Gilbert was arrested in the early morning hours, while he was asleep.

Although he now claims that his conduct was motivated by addiction, Gilbert's own statements at the time indicated a more old-fashioned motive: greed. In recorded calls, Gilbert repeatedly bragged about the fancy clothes and cars he was buying with robbery proceeds, saying that he was "rollin' this 750 beamer" as well as a Camero and a Charger. He detailed that he had "four hundred dollar jeans," "five hundred dollar leather coats," "a mother fucking Armani dress shirt," "diamond earings," and "twenty pairs of shoes." He told his friend, "I'm buyin' everything … I'm talkin' about brand new shit." Greed continues to motivate Gilbert. Although he claims to be sorry for his crime, he has refused to disclose the location of his $148,000 in robbery proceeds that he obtained in the two months before his arrest, and now claims that he has no assets and cannot pay a fine.

Darius Gilbert has proven himself to be a violent, dangerous man, who has repeatedly refused to be deterred from his criminal ways. When he committed these crimes, he had just escaped after completing most of a 200-month federal prison sentence for another bank robbery conviction. Three days before he robbed the Bank of Marin, he stated in a recorded call that he knew full well that he faced at least another twenty years in prison if he was caught. Yet, he proceeded to do it anyway. A lengthy sentence is necessary to protect the community from further violence by Gilbert.

## FACTUAL BACKGROUND

On December 6, 2000, Judge Breyer sentenced Darius Gilbert to 200 months in prison. Gilbert had robbed two banks in April 1999. At the first bank, he had pushed a note in front of the teller that stated, "This is a robbery. Don't make a scean [sic] or make me nervous cause I am armed!" (PSR ¶

106.) He then told another teller, "Give me all your cash" and "I'll blow you away," and yelled "Don't move! Don't you move!" at the other employees. (*Id.*) At the second bank, seven days later, he grabbed the keys and locked the door to the bank, and then pointed a semiautomatic pistol directly at the bank manager and said, "Give me all your money. Hurry up or I'll blow your head off." He then pointed the gun directly at multiple other tellers and patrons, threatening, "I'll blow your brains out … if you don't move … bitch … hurry up … put the money in the bag." (*Id.*)

After serving most of that 200-month sentence, Gilbert escaped. On March 26, 2015, Gilbert left custody while he was en route via bus to a halfway house. (*Id.*) He then began a series of nine bank robberies over the next two months.

On March 30, 2015, he robbed a US Bank, leaning forward and pointing a steak knife at the teller. He then robbed a second teller, shouting, "Give me all the fucking money or I'll fucking jump over the counter and stab you." (PSR ¶ 7.)

On April 2, 2015, he robbed two tellers at a Citi Bank, yelling that he had a gun and demanding "large bills." He threatened, "Don't make me go behind the counter." (PSR ¶ 8.) T.U., the second teller that he robbed, has submitted a victim impact statement, which is attached to the PSR. She described the robbery as "traumatiz[ing]" and "humiliating," and said that, "I cringe and am terrified of men that look like him" now. She has nightmares, fear, grief, anger, and anxiety, and has a "hard time trusting anyone no matter how nice or kind they may appear at first." (PSR, Victim Impact Statement.)

On April 7, 2015, he robbed a Bank of America teller, pointing a knife and threatening that "if you don't hurry up, I'm gonna stab you." He then robbed a second teller at that bank, throwing back the $1 bills that she gave him and demanding bigger bills. (PSR ¶ 9.)

On April 17, 2015, Gilbert robbed three tellers at US Bank, again shouting that he had a gun and threatening, "Don't make me use my gun. I'll kill you." One of the tellers was pregnant, and experienced stomach cramps, shaking, and heart racing after the robbery was over. (PSR ¶ 10.)

On April 20, 2015, he robbed two more tellers at Citi Bank, shouting at them to move faster and asking, "do you want me to take out my gun?" (PSR ¶ 11.)

On May 9, 2015, Gilbert pointed a gun at the teller at Chase Bank and demanded money. A screen capture from the surveillance video showing Gilbert pointing the gun is attached as Exhibit A.

When a customer at the bank started to move, he became angry and pointed the gun at the customer, yelling that "you better not move again." As he left, he announced, "I'm glad I didn't have to shoot anyone today." (PSR ¶ 12.)

On May 14, 2015, Gilbert came up to the bank teller at East West Bank with a gun in his hand and demanded money from her and the next teller. He then shouted at her, "Bitch! Fuck! I want big bills not the small ones. Give me all! You don't want me to jump in." On his way out, he pointed his firearm at the bank manager and yelled three times, "Give me the money!" When she said she did not have money because she was a supervisor and showed she could not open the drawer, he yelled, "Don't touch anything. Don't move. Don't follow me." (PSR ¶ 13.) A screen capture from the surveillance video showing Gilbert pointing the gun is attached as Exhibit B.

On May 26, 2015, he robbed tellers at Chase Bank in Elk Grove by threatening the use of a gun. (PSR ¶ 15.) Although this crime occurred in the Eastern District of California, Gilbert has admitted the facts concerning that robbery in the plea agreement. (Plea Agreement, ¶ 2.)

On June 2, 2015, Gilbert robbed another series of tellers at the Bank of Marin using a gun. When the tellers gave him small bills, he threw them back. He then yelled, "You have 10 seconds to give me the money." He yelled this several times. He then pointed the gun at one teller and said, "give me all the money or I am going to shoot him." Gilbert began counting down from ten while pointing the gun at that teller. (PSR ¶ 16.) A screen capture from the surveillance video showing Gilbert pointing the gun at the teller is attached as Exhibit C.

During this time, between May 14, 2015, and May 30, 2015, Gilbert answered a series of calls from friends who were inmates at the Bureau of Prisons. At the outset of each call, Gilbert was warned that the call was from an inmate and would be recorded. Audio recordings of those calls are attached as Exhibit D, and transcripts to aid the Court's review are attached as Exhibits E-O.

In those calls, Gilbert openly gloried in the wealth he had obtained from the robberies. He repeatedly bragged about his BMW. On May 14, 2015, he told the caller that he was "rollin' this 750 beamer." (Ex. E at 3.) He discussed the BMW over and over again on calls. (Ex. F at 2-5 ("me and Erica in the Beamer"; "we in the Beamer last night"; "Beamer run hard like a Corvette"; how his "young broad" wanted to "fuck on that thing" and he "took pictures"); Ex. G at 3 ("Look I'm ridin' 750"); Ex. I

at 5 ("750 baby 2009 model"); Ex. K at 5 ("That BMW sound so clean it's crazy").  He also bragged about other cars.  On May 18, 2015, he announced that he was going to buy a "Camero," saying "Yeah I'm fine to go get me a SX."  (Ex. I at 3.)  On May 23, 2015, he said, "I'm ridin' in a Charger right now…  With the rims and everything, nigga.  Super clean, nigga."  (Ex. L at 2.)

     Gilbert also gloated about the expensive clothes that he bought with the robbery money. Ex. F at 5 ("I got so much more fuckin' clothes."); Ex. G at 3 ("Man I'm out here wearin' four hundred dollar jeans"); Ex. J at 3 ("I got on some motha fuckin' some motha fuckin' brand new double air max's all red"); Ex. K at 6 ("I'm out here for real…  I'm out here wearin' five hundred dollar leather coats….  I got like twenty pair of shoes…  I'm gonna send you some pictures."); Ex. N at 1 ("I got on some True Religion pants … with the blue and yellow Lebron tennis shoes on….  I got a mother fucking Armani dress shirt.").

     Gilbert also reveled in the news coverage of the robberies.  He boasted in a call on May 28, 2015, about being "savage" during the May 26 robbery.  "If you'd have seen the way shit went on yesterday, nigga, you'd be like man this nigga is savage….  I'm talkin' 'bout nigga, nigga, it's so, it, it was just so excitin'."  (Ex. M at 2.)  In another call, on May 18, 2015, he stated with pride that the news had called him "armed and dangerous type shit" and that they had his picture.  (Ex. H at 3.)  Again, on a call on May 30, 2015, Gilbert told the caller he was doing "good" because "hell yeah nigga I'm chu – yeah, I'm on the news every fuck, fuckin' new channel in the, in, in the motha fuckin' world."  (Ex. O at 2.)  "I made the motha fuckin' front page of a newspaper….  In Frisco and Oakland and Sacramento….  Be on the lookout, armed and dangerous man, he's a serial bank robber. [laughs]."  (*Id.* at 4.)

     Gilbert's statements showed that he had premeditated his plan to conduct a series of robberies while he was still incarcerated and that he had discussed it with one of the callers while they were in prison together.  The caller asked if Gilbert was using the disguise that they had discussed, and Gilbert responded he was not using a disguise but instead was going "[s]traight up" and had done "'bout five" robberies.  (Ex. H at 5.)

     Moreover, Gilbert made it clear that his overriding motive was greed from the time that he had planned the robberies while in prison. "I'm out here knockin' these mother fuckers down like left and right….  I'm out here doin' everything we was talkin' 'bout – Beamers, Chargers, and Camer[o] – I'm

doin' all of that nigga, I ain't been out two months, nigga, I'm buyin' everything…. I'm talkin' 'bout brand new shit.... I'm out here lookin' like a superstar." (Ex. M at 6-7.) "I'm always gonna get some money…. You know I don't nuttin' else but to get money…. I ain't been out two months and I'm doin' everything a nigga get out of here be ten years." (Ex. K at 7.)

Most disturbingly, Gilbert openly stated his intention to use his gun to shoot others – including law enforcement – to avoid being apprehended, because he knew he faced a twenty-year sentence if he was caught. On a May 30, 2015 call, just three days before he robbed Bank of Marin, Gilbert said, "Shit, nigga. I ain't going to jail…. Crazy as hell if you think I'm a be, uh, forty-something comin' back to prison with a twenty piece, you lost your mind…. You lost your mind, nigga you crazy for real, nigga I fuckin' shoot it up… Y'all goin', I'm goin' too…." The other caller then said, "Shit, when they see how serious it is, they gon, they gon god damned near get out of the way." Gilbert responded, "Yeah, they gon back up…. [W]hen they try to get stupid and a nigga pull over and you know, and gat on that ass." (Ex. O at 5-6.)

## SENTENCING GUIDELINES CALCULATIONS

The government concurs with Probation that the Total Offense Level is 30, that the defendant's Criminal History Category is VI, and that the Sentencing Guidelines range is 252 to 294 months.

## SECTION 3553(A) FACTORS

Section 3553(a) directs courts to consider a number of factors in determining an appropriate sentence. In this case, these factors indicate that a high-end Guidelines sentence of 294 months is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The key factors are the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B), the need to protect the public from further crimes of the defendant *id.* § 3553(a)(2)(C), and the need to provide the defendant with needed medical care or other treatment. *Id.* § 3553(a)(2)(D).

As for the history and characteristics of the defendant, Gilbert's extensive criminal history shows an escalating pattern of violence, often within months of being released from his prior period of incarceration. While on probation for possession of cocaine base for sale, he was convicted of felony


grand theft from a person in 1988 and sentenced to two years in prison.  (PSR ¶¶ 101-102.)  While on parole for that offense, he beat up his ex-girlfriend, who sustained cuts on her lower lip, loose teeth, and a laceration on her face, and took their child.  He was convicted of felony battery for inflicting corporal injury on a spouse or cohabitant, and sentenced to three years in prison.  (PSR ¶ 103.)  While on parole for that offense, he was convicted of possessing a firearm and sentenced to another two years in prison.  (PSR ¶ 104.)  Again, within a few months of being released on parole, he kicked in the door of the victim's residence, ransacked the bedrooms, and stole credit cards and a gold watch.  He was sentenced to six years in prison for first degree burglary.  (PSR ¶ 105.)  Three months after being released on parole from that sentence, he robbed two banks in the Bay Area.  In the first robbery, he threatened multiple tellers, claiming he was armed, swearing, and saying that "I'll blow you away."  (PSR ¶ 106).  In the second robbery, he pointed a gun directly at the bank manager and at several tellers and patrons, threatening to blow their brains out.  (*Id.*)  After being sentenced to 200 months in prison, he remained undeterred.  While in prison, he planned a new series of robberies, for which he has now been convicted, and promptly escaped to commit those robberies while transferring to a halfway house.

Again and again, Gilbert has returned to a life of violent crime despite repeated and increasingly lengthy prison sentences.  Although Gilbert has shown that he will not be deterred, a long period of incarceration is necessary to protect the public from Gilbert's return to violent crime upon his next release from prison.

Gilbert asserts that this Court should vary downwards from his Guidelines sentence because he had a difficult childhood and has struggled with drug addiction.  Darius Gilbert is 49 years old.  He has had numerous opportunities to turn his life around, and has consistently refused them.  He has participated in Alcoholics Anonymous, Narcotics Anonymous, classes in anger management and victim impact, and a 40-hour residential program for drug addiction in 2003.  (PSR ¶ 133.)  Yet, he repeatedly chose to turn back to violent crime.  In this case, he was on his way to a halfway house, which had resources available to help him find employment and combat addiction.  Instead of taking advantage of those resources, he plotted to escape and rob more banks.

Moreover, Gilbert's own words in his recorded calls show that these robberies were motivated by self-aggrandizement and greed rather than drug addiction.  Indeed, he planned these robberies during

his incarceration in federal prison, where he had not had regular access to drugs for fifteen years and was presumably sober.

Though Gilbert now claims that he regrets his crimes and wants to change his ways, his actions show that he continues to be motivated by the same greed that drove him to commit these robberies. He obtained over $148,000 in robbery proceeds in the two months before he was arrested. (PSR ¶¶ 18, 139.) Yet, he now denies having any assets and claims to be too impoverished to pay a fine. (PSR ¶ 139.) Wherever Gilbert has stashed the robbery proceeds, he apparently hopes that the Court will vary downwards to release him while he is still young enough to enjoy his ill-gotten wealth. The government respectfully recommends that the Court decline that invitation.

Darius Gilbert has already received a significant break in this case. The grand jury indicted him on three counts of using, carrying, or possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Twelve, Thirteen, and Fourteen). Based on those three counts, he faced a 57-year mandatory minimum. That is because the first violation of section 924(c) carries a seven-year mandatory minimum, and each subsequent violation carries a 25-year mandatory minimum. Section 924(c) provides that "[i]n the case of a second or subsequent conviction under this subsection, the person shall … be sentenced to a term of imprisonment not less than 25 years." In *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court held that "conviction" means "the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," and more than one such "conviction" can occur in a single proceeding. *Id.* at 131-32. Thus, in that case, the Supreme Court upheld a sentence applying multiple, consecutive 25-year mandatory minimum sentences based on the use of guns in multiple robberies charged in the same indictment. *Id.* Though Gilbert has admitted to brandishing a firearm during all three robberies referenced in Counts Twelve through Fourteen (*see* Plea Agreement ¶ 2), the plea agreement did not require him to plead guilty to those charges, thereby avoiding two consecutive 25-year mandatory minimums.

## CONCLUSION

In full consideration of the defendant's history and characteristics together with the goals of sentencing, the United States respectfully concurs with Probation's recommendation that the Court sentence the defendant to a high-end Guidelines sentence of 294 months imprisonment.

| | | |
|---|---|---|
| 1 | Dated: August 23, 2016 | Respectfully submitted, |
| 2 | | BRIAN J. STRETCH |
| 3 | | United States Attorney |
| 4 | | |
| 5 | | By: _____/s/_____<br>    Rita F. Lin |
| 6 | | Assistant United States Attorney |

USA'S SENTENCING MEMORANDUM
NO. 15-00324 VC                                9