STEVEN G. KALAR
Federal Public Defender
CANDIS MITCHELL
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    415.436.7700
Facsimile:    415.436.7706
candis_mitchell@fd.org

Counsel for Defendant Darius Gilbert

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America,**  Plaintiff,  v.  **Darius Gilbert,**  Defendant. | Case Number: 15cr00324-VC  **Sentencing Memorandum**  Date:   August 30, 2016  Time:   10:30 a.m. |

Darius Gilbert, through undersigned counsel, respectfully offers the following memorandum in support of his request for a 200-month sentence of imprisonment. While Mr. Gilbert has had a tragic childhood and continuing addiction issues, the most prevailing factor for the Court to consider is that a longer sentence would produce little difference than a still substantial 200-month sentence.

**1.     Section 3553(a) Analysis**

    **1.1.     The Nature and Circumstances of the Offense . . .**

On March 26, 2015, Mr. Gilbert was completing the custodial portion of his sentence with the Bureau of Prisons for a 2000 federal conviction for Armed and Unarmed Bank Robbery. At the time he

was released from USP Pollock in Louisiana, he was addicted to methamphetamine, heroin, Percocet, Oxycontin, and Xanax—substances that he had abused the entire time he was in federal custody. PSR ¶ 132. Once released, he travelled via Grayhound bus to the Residential Reentry Center in Oakland, California. PSR ¶ 6. His route to Oakland took him through Dallas, Texas, and it was there that Mr. Gilbert abandoned his BOP release plan to continue travelling across the country via bus. Starting to use methamphetamine and heroin once again while at the bus stop in Texas, he continued unabated in his substance abuse until his arrest in this case. PSR ¶ 132.

Mr. Gilberts' exploits in this offense are well documented in the PSR. PSR ¶¶ 7-16. In summary, he began robbing banks to support himself and his habit while out of custody. *Id.* For a period of two months, he robbed nine banks—on two occasions brandishing a knife and on two occasions brandishing a firearm. *Id.* While the employees of the bank reported feeling fear and anxiety, PSR at 38-41, Mr. Gilbert never physically harmed anyone during the course of the robberies. PSR ¶¶ 7-16. In committing his offenses, Mr. Gilbert has stated that he "has remorse for the crime I have committed and will not commit this crime again. I did not have intentions to harm anyone." PSR ¶ 20.

For his involvement in the above, he pled guilty to Escape (Count One), Armed Bank Robbery (Counts Two, Four, Seven, Eight, and Nine), Bank Robbery (Counts Three, Five, and Six), Felon in Possession of a Firearm (Count 11) and Possessing a Firearm During a Crime of Violence (Count 14).

**1.2   . . . [And] the History and Characteristics of the Defendant.**

Frankly, Mr. Gilbert presents a difficult case in mitigation to the Court. As a previously convicted felon who commits multiple offenses while released it is tempting to place Mr. Gilbert in a cell for the rest

of his life. Undoubtedly, the Government will argue that an extended sentence is necessary in order to deter Mr. Gilbert from continuing to rob banks and commit other offenses. But as Mr. Gilbert's prior history shows, there is no magic amount of prison time that would suddenly trigger deterrence.

In 2000, Mr. Gilbert was sentenced to 200 months for Armed and Unarmed Bank Robbery, PSR ¶ 106. Despite this significant sentence and he remained undeterred. Simply increasing Mr. Gilbert's prison sentence is not the solution—such treatment has done little to set Mr. Gilbert on the right course. Instead, Mr. Gilbert requires intensive counseling and substance abuse treatment to address the underlying issues that affect his behavior and encourage the behavioral modifications that would reduce recidivism.

Mr. Gilbert's substance abuse began at 13, when he started using "alcohol, marijuana, and cocaine." PSR ¶ 132. His use of controlled substances tied in to his poor performance in school, and Mr. Gilbert left his schooling and divorced parents to live on the streets. PSR ¶ 136. Life there was preferred over living with his family. As described in the PSR:

> It was not uncommon that his father would get drunk, get into fights and "whomp on his girlfriends." His father was described as a violent person and "kind of crazy." He witnessed his father pull out guns and threaten people and hit Maxine [his second wife] with a gun.

PSR ¶ 126.

As he grew up, Mr. Gilbert began committing various offenses, initially stemming from his drug addiction and need to support it and then morphing into convictions of a more serious nature—as he attempted to maintain his lifestyle. PSR ¶¶ 101-106; 112-122.

By the time he reached his 40s, his initial foray into illegal substances had expanded to consumption of 3-4 grams of cocaine daily, use of methamphetamine, 5-6 grams of heroin and using opioid pain

relievers. PSR ¶ 132. In addition to an expanded drug habit, Mr. Gilbert had experienced most of his life while in custody. PSR ¶ 127. Such time in custody has caused him to miss joyful aspects of his life, such as being a father to his daughter Darlene, or interacting with his first grandchild. PSR ¶ 127. It has also deprived him of an ability to attempt to properly mourn his father, who ultimately committed suicide following his murder of his wife, Mr. Gilbert's step-mother. PSR ¶ 126.

It is an accepted tenet of criminal law that a defendant who has suffered a disadvantaged background is less culpable than one without the excuse. *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring).

Mr. Gilbert has undoubtedly suffered from a disadvantaged background. He was left to roam the streets and abused by his father. While a child suffering these personal tragedies, he unfortunately turned to controlled substances as a dealing with his pain. PSR ¶ 132. As is clear from the nature of the offense and Mr. Gilbert's own statements, Mr. Gilbert's criminal activity is linked to his personal tragedy, inability to have conceived of any other means of supporting himself, and history of drug use. Rather than continuing to mature and grow as a man throughout his life, he has lead the stunted life of a 13-year-old where superficial attention to clothing and cars was all-important and the instant gratification of drugs was preferred over all else.

While not an excuse, his life history provides strong insight into what underlies his behavior—it is not malice or solely a desire for personal gain, but rather a lack of maturity and addiction that drove his actions. Substance abuse treatment coupled with emotional and rehabilitative support is more likely than an extended sentence produce a rehabilitative effect removed from the possibility of recidivism.

**1.3   The Need for the Sentence Imposed.**

**1.3.1   To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; To Afford Adequate Deterrence;**

The requested sentence is significant at 200 months and, thus, reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and serves as an adequate deterrence to criminal conduct.

While the Court may be tempted to give Mr. Gilbert a sentence well in excess of 200 months, research suggests that the dramatic increases in sentences called have no meaningful deterrent effect.[1]  Research on general deterrence shows that while certainty of punishment has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."  Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28-29 (2006).

In fact, a review of results by the sentencing commission showed that recidivism rates remained nearly constant amount all defendants, regardless of the sentence imposed.

---

[1] Research dating back to 1983 found that "In general, despite controls for the effects of prior record, age when released, age at first adult arrest, and type of offense for which released, no relationship was found between recidivism and length of time served in prison" US Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, "Recidivism of Prisoners Released in 1983" Allen J. Beck, Ph. D. available online at http://www.bjs.gov/content/pub/pdf/rpr83.pdf

Defendant's Sentencing Memorandum
15cr324-VC                                                    5



Chart 1.  U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05. Of the 25,431 cases in this study, the Commission excluded cases from this analysis that were missing information necessary to perform the analysis. Available at: http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf

**1.3.2   To Protect the Public from Further Crimes of the Defendant; and**

Mr. Gilbert does have criminal history with a demonstrated prior history of robbing banks. PSR 106. But receiving a then sentence of 200 months alone did not stop Mr. Gilbert from reoffending because it did not provide him with substantial treatment for his addiction, which continued unabated while in custody. PSR ¶ 133.

Ultimately, what will be the greatest deterrent to Mr. Gilbert's continued criminality, in addition to substance abuse treatment, is his merely aging 10 years. Studies have repeatedly shown that the older offenders are at sentencing, the lower risk for reoffending. [2]

---

[2] See David P. Farrington, Age and Crime, in Crime and Justice: An Annual Review of Research Vol. 7 (Michael Tonry and Norval Morris, eds., 1986); Jeffery T. Ulmer and Darrell Steffensmeier, The

The below table shows the percent of federal prisoners released on community supervision in 2005 who were arrested for a new crime or returned to prison, by demographic characteristics from 2005-2010.

| Federal Prisoners | | |
|---|---|---|
| **Age** | **Arrested after release** | **Returned to prison after release** |
| **24 or younger** | 64.7% | 45.8% |
| **25–29** | 59.3 | 40.7 |
| **30–34** | 52.9 | 34.7 |
| **35–39** | 48.6 | 31.9 |
| **40–44** | 44.5 | 29.4 |
| **45–49** | 37.7 | 24.7 |
| **50 or older** | 23.5 | 14.7 |

Table 1. Bureau of Justice Statistics, Recidivism of Offenders Placed on Federal Community Supervision in 2005 and Recidivism of State Prisoners Released in 2005 data collections. Available at: http://www.bjs.gov/content/pub/pdf/ropfcs05p0510.pdf.

Inmates who were 50 or older when they were released from prison were substantially less likely to return to prison or be arrested after release. Presently, Mr. Gilbert is 49-years-old. Should the Court sentence him to the requested 200-month sentence it would be anticipated that with credit for good behavior Mr. Gilbert's release date would be September 19, 2029. He would be approximately 62-years-old at his release.[3] At 62, he would be well-passed the age where he would likely be committing further bank robberies, but still below the traditional retirement age of 65-years-old and able to at least start the process of trying to attain some gainful employment that could be used to accrue social security and make restitution payments. Additionally, Mr. Gilbert would be able to hopefully reconnect with his still living family

---

Age and Crime Relationship: Social Variation, Social Explanations in The Nurture versus Biosocial Debate in Criminology 378 (K. Beaver, B. Boutwell, and J.C. Barnes, eds., 2014). "It is now a truism that age is one of the strongest factors associated with criminal behavior."

[3] If Mr. Gilbert were sentenced to the 294-month sentence requested by probation and the Government, his anticipated release with credit for good behavior would be June 7, 2036. He would be nearly 70 at release.

members who could provide key transitional support as he is once again acclimating to being out of custody. Mr. Gilbert's mother and sisters remained supportive of him and continues to provide financial and emotional support while he is in custody. PSR ¶ 127.

### 1.3.3 To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.

Mr. Gilbert previously completed his GED while in custody. PSR ¶ 135. The primary correctional treatment applicable to him would be for treatment of substance abuse. A long time abuser, Mr. Gilbert has yet to participate in the BOP's flagship treatment program, the 500-hour Residential Treatment Program. He remains interested in the program and would greatly appreciate receiving treatment. As he said during his probation interview:

> Drugs had a measured impact on me. I wish I never used drugs, for real. I know I wouldn't be living this kind of life if I hadn't used drugs. I've been trying to shake the addiction of being on heroin for years, but I've never been able to achieve it. That's why I need treatment.

PSR ¶ 134.

Receiving treatment for his addiction would do what ever-increasing periods of incarceration have failed to do, and will fail to do in the future, curb Mr. Gilbert's addiction—which is a causes for him to commit offenses.

### 1.4 The Kinds of Sentences Available.

Here, the Court may impose any sentence up to the maximums shown below, all with a per count maximum fine of $250,000 and mandatory special assessment of $100 per count—resulting in a maximum special assessment of $1100.

Defendant's Sentencing Memorandum
15cr324-VC                               8

|  | Maximum Term Of Imprisonment | Minimum Term Of Imprisonment | Maximum Term Of Supervised Release |
|---|---|---|---|
| **Count 1** <br> **Escape** | 5 Years |  | 3 Years |
| **Counts 3, 5, 6** <br> **Bank Robbery** | 20 Years |  | 3 Years |
| **Counts 2, 4, 7-9** <br> **Armed Bank Robbery** | 25 Years |  | 5 Years |
| **Count 11** <br> **Felon In Possession Of Firearm** | 10 Years |  | 3 Years |
| **Count 14** <br> **Use Of A Firearm To Commit A Felony** | Life | 7 Years Consecutive To Any Other Term Imposed | 5 Years |

### 1.5 The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines

#### 1.5.1 Mr. Gilbert's Proposed Guideline Calculations.

Combined Offense Level ................................................................. 33

Acceptance of Responsibility, USSG § 3E1.1(a) & (b).................... –3

Total Offense Level ........................................................................ 30

Criminal History Category ............................................................. VI

Sentencing Guideline Range ................................................. 168-210

Probation Officer Recommendation ............................... 294 months

Mr. Gilbert's Recommendation........................................ 200 months

#### 1.5.2 The Court Should Adjust Downward Three Levels for Acceptance of Responsibility.

Pursuant to U.S.S.G. § 3E1.1, the Court should depart three levels because Mr. Gilbert accepted responsibility for his involvement in the present offense.

**1.6   Any Pertinent Policy Statement.**

Addressed above.

**1.7   Unwarranted Sentencing Disparity.**

A sentence of 200 months would not result in an unwarranted sentencing disparity.

There were 132 individuals sentenced in Fiscal Year 2015 for robbery. Using the statistics for U.S.S.G. § 2B3.1 at criminal history category VI, those sentenced had a mean sentence of 127 months and a median sentence of 105 months.[4] Those convicted of felon in possession of a firearm, using the statistics for U.S.S.G. § 2K2.1, had a mean sentence of 101 months and a median of 84 months at criminal history category VI. Those convicted of escape, using the statistics for U.S.S.G. § 2P1.1 at criminal history category VI, had a mean and median sentence of 15 months. Adding the medians of the two most serious charges at 105 and 84 months, that results in a sentence of 189 months. Well-within the range of the requested sentence of 200 months.

Further, even if this sentence creates disparity with other defendants, this requested sentence reflects a sentence tied to—rather than divorced from—the other § 3553(a) factors. Any disparity from sentences untethered to these considerations is not just "warranted," but required.

**1.8   Restitution.**

The parties have agreed to restitution in the amount of $148,090. PSR ¶ 17. The restitution amounts should be applied as set forth below:

---

[4] http://isb.ussc.gov/content/pentaho-cdf/RenderXCDF?solution=Sourcebook&path=&action=table_xx.xcdf&template=mantle&table_num=Table14AG

Defendant's Sentencing Memorandum
15cr324-VC                                  10

| Victim Name | Amount of Loss |
|---|---|
| US Bank<br>4610 Mission Street | $13,310.00 |
| Citi Bank<br>260 California Street | $10,708.00 |
| Bank of America<br>3701 Balboa Street | $9,081.00 |
| US Bank<br>4610 Mission Street | $12,832.00 |
| Bank of Marin<br>1101 4th Street | $31,123.00 |
| Citi Bank<br>2198 Chestnut Street | $12,292.00 |
| Chase Bank<br>3206 Delta Fair Blvd | $18,555.00 |
| East West Bank<br>3601 Balboa Street | $18,104.00 |
| Chase Bank<br>7427 Laguna Blvd | $22,085.00 |
|  |  |

Mr. Gilbert would request that the restitution payments be made without interest or penalty for delinquency as reasonable efforts to collect the interest or penalty are not likely to be effective. *See* 18 U.S.C. § 3612(h).

**2. Conclusion**

The facts before the Court establish reasons to impose a sentence below the probation officer's and Government's recommendation.

Mr. Gilbert asks the Court to sentence him to a total term of imprisonment of 200 months as set forth below:

|  | Term Of Imprisonment | Term Of Supervised Release |
|---|---|---|
| **Count 1** <br> **Escape** | 60 months concurrent to all other charges | 36 months concurrent to all other charges |
| **Counts 3, 5, 6** <br> **Bank Robbery** | 116 months concurrent to all other charges | 36 months concurrent to all other charges |
| **Counts 2, 4, 7-9** <br> **Armed Bank Robbery** | 116 months concurrent to all other charges | 60 months concurrent to all other charges |
| **Count 11** <br> **Felon In Possession Of Firearm** | 116 months concurrent to all other charges | 36 months concurrent to all other charges |
| **Count 14** <br> **Use Of A Firearm To Commit A Felony** | 84 months consecutive to all other charges | 60 months concurrent to all other charges |
| *Total* | *200 months* | *60 months* |

He would additionally request that he serve his sentence near the Northern District of California so that his family may continue to visit him.

Respectfully submitted,
STEVEN G. KALAR
Federal Public Defender

Dated:  August 23, 2016

 */s/ Candis Mitchell*
CANDIS MITCHELL
Attorney for Defendant

Defendant's Sentencing Memorandum
15cr324-VC                                                12